**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

**(WORCESTER DIVISION)**

---

**CHRISTOPHER P. DALY,**

    Plaintiff,

v.

    Civil Action No. _____

**TRANSUNION LLC,**

    Defendant.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

(Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq.)

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which confers original jurisdiction in any United States district court over claims arising under the Fair Credit Reporting Act.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Worcester, Massachusetts.

## II. PARTIES

3. Plaintiff Christopher P. Daly is a natural person residing at 1395 Main Street, Worcester, Massachusetts 01603, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

4. Defendant TransUnion LLC is a Delaware limited liability company with its principal place of business at 555 W. Adams Street, Chicago, Illinois 60661. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties in interstate commerce. TransUnion may be served through its registered agent.

## III. FACTUAL ALLEGATIONS

A.  The Synovus/First Digital Account — Chronologically Impossible Derogatory Reporting

5.  At all relevant times, TransUnion maintained a consumer report on Plaintiff that included a tradeline identified as "Syn/Firstdig" (Synovus Bank / First Digital Mastercard), account number 5264490206 68****, listed as a revolving credit card account.

6.  According to TransUnion's own consumer disclosure, the Synovus/First Digital account has a Date Opened of July 1, 2024 and was Reported on July 11, 2024 — a span of ten (10) calendar days.

7.  Despite the account being open for only ten days, TransUnion reported — and continued to report — the account as "60 days late" as of its first reporting date of July 11, 2024.

8.  A sixty-day delinquency is chronologically impossible on a ten-day-old account. No billing cycle had elapsed. No payment had come due. No payment could have been missed by sixty days when the account had existed for only ten days. This status designation is facially impossible under any coherent payment-history methodology.

9.  Both Equifax and Experian corrected this tradeline following Plaintiff's disputes. TransUnion was the only consumer reporting agency to persist in reporting the false derogatory status.

10.  Plaintiff filed a formal dispute with TransUnion regarding the Synovus/First Digital derogatory reporting. TransUnion conducted a purported reinvestigation and verified the impossible status as accurate, taking no corrective action.

11.  Plaintiff also filed CFPB Complaint No. 250904-23757702 on September 3, 2025, which was transmitted to TransUnion. TransUnion's response of October 25, 2025, labeled the account "SYNOVUS/FIRST DIGITAL/VT — ACTIVE DISPUTE" but made no correction to the derogatory payment status.

12.  On March 31, 2026, following Plaintiff's transmission of a Notice of Intent to file a Motion for Summary Judgment, TransUnion's Executive Resolution Team wrote to Plaintiff confirming: "The Synovus First Digital account has been updated to reflect a 'never late' status." This post-dispute correction, made only after Plaintiff threatened litigation, constitutes a judicial admission that TransUnion's prior reporting of this account was inaccurate.

13.  TransUnion's verification of a facially impossible derogatory status — and its correction only under litigation threat — demonstrates that TransUnion lacked reasonable procedures to assure maximum possible accuracy of the information it reported, in violation of 15 U.S.C. § 1681e(b). The same conduct demonstrates willful noncompliance within the meaning of 15 U.S.C. § 1681n.

B.  The Austin Capital Bank SSB Account — Verify-Then-Delete Sequence

ᚺᚲᛎᚺᚲ.ᛗᛝᛝᛝᛝᛚ.ᛝᚱ.ᛁᚲ.ᛝᛝ.ᛈᛎᚲᛝᚺᚴᛎᛈᚺᛝ

14. TransUnion's consumer report on Plaintiff included a tradeline identified as "Austin Capital Bank SSB" ("Austin Capital"), account number 8A1702****, a closed secured installment loan with an original balance of $2,500, opened January 12, 2024 and closed July 17, 2025.

15. TransUnion reported the Austin Capital account as "60 days late / Paid, Closed: was 60 days past due," with a June 2025 delinquency notation of 30 days late.

16. Plaintiff disputed the Austin Capital delinquency reporting with TransUnion on multiple occasions. On or about August 19, 2025, TransUnion issued reinvestigation results under File Identification Number 000458333944, stating: "INVESTIGATION RESULTS — VERIFIED AS ACCURATE and NO CHANGE NEEDED: The disputed item(s) was verified as accurate. No changes were made to the item(s) based on your dispute."

17. Experian's consumer report on Plaintiff showed the Austin Capital account as "Paid, Closed/Never Late" with a 24-month perfect payment history — a directly contradictory status for the same account, reported by a different consumer reporting agency during the same time period.

18. TransUnion's verification of the Austin Capital delinquency as accurate was false. TransUnion conducted its purported reinvestigation despite the existence of contradictory information from other reporting agencies and Plaintiff's documentary submissions.

19. On March 31, 2026, in the same communication in which TransUnion corrected the Synovus/First Digital account, TransUnion's Executive Resolution Team confirmed: "the Austin Capital Bank SSB account has been removed." This deletion occurred after TransUnion had verified the account as accurate — confirming that TransUnion's prior verification was false and its procedures were unreasonable.

20. The sequence — (1) dispute; (2) verification as accurate; (3) removal under litigation threat — is a "verify-then-delete" pattern that, as a matter of law and logic, establishes that TransUnion's verification was not conducted in good faith and that TransUnion's procedures for assuring accuracy were unreasonable.

C. Intraday Score Discrepancy — Data Integrity Failure

21. On March 27, 2026, within minutes of each other, TransUnion provided a VantageScore of 601 to LendingClub and a VantageScore of 558 to Credible — a 43-point discrepancy in scores generated from what should be an identical underlying consumer file on the same business day.

22. The adverse action notice from Credible, generated on March 27, 2026, cited "collection action or judgment" and "serious delinquency" as adverse factors — negative factors that did not appear in the LendingClub report generated the same day.

23. A 43-point intraday discrepancy between reports generated from the same consumer file within minutes of each other is consistent with the existence of a "split file" or data synchronization failure within TransUnion's systems, and constitutes evidence that TransUnion failed to maintain reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b).

24. Plaintiff filed CFPB Complaint No. 260327-30555862 on March 27, 2026, documenting this discrepancy. That complaint remains open.

## D. Damages

25. As a direct and proximate result of TransUnion's FCRA violations, Plaintiff has suffered: (a) denial of credit applications, including but not limited to applications to LendingClub and Credible on March 27, 2026; (b) documented credit score decreases of 43, 66, 29, and 16 points at various points attributable to TransUnion's inaccurate reporting; (c) ongoing damage to his credit reputation; (d) emotional distress and frustration attendant to repeated failed disputes; and (e) expenditure of time and resources in pursuit of correction.

## IV. CLAIMS FOR RELIEF

COUNT I — Willful Violation of 15 U.S.C. § 1681e(b)

(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy)

26. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 23 as if fully set forth herein.

27. Section 1681e(b) requires that whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

28. TransUnion violated § 1681e(b) by: (a) reporting a "60 days late" status on an account that had existed for ten days; (b) reporting delinquencies on the Austin Capital account that other CRAs did not report for the same account in the same period; (c) generating materially different scores from the same underlying file within minutes of each other on March 27, 2026.

29. TransUnion's violations were willful. TransUnion verified the chronologically impossible Synovus/First Digital delinquency as accurate. TransUnion verified the Austin Capital delinquency as accurate. TransUnion corrected both accounts only after Plaintiff threatened litigation — demonstrating that it possessed the ability to identify and correct these errors throughout but chose not to do so. Willful violations entitle Plaintiff to statutory damages under 15 U.S.C. § 1681n(a)(1) in an amount of not less than $100 nor more than $1,000 per violation, as well as punitive damages under § 1681n(a)(2).

COUNT II — Negligent Violation of 15 U.S.C. § 1681e(b)

(In the Alternative)

30. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 27 as if fully set forth herein.

31. In the alternative, if TransUnion's violations of § 1681e(b) are found not to be willful, they were at minimum negligent within the meaning of 15 U.S.C. § 1681o, entitling Plaintiff to actual damages, including but not limited to credit-related harm and the emotional distress described herein.

COUNT III — Willful Violation of 15 U.S.C. § 1681i(a)

(Failure to Conduct Reasonable Reinvestigation)

32. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 29 as if fully set forth herein.

33. Section 1681i(a)(1) requires that upon receipt of a consumer dispute, a consumer reporting agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and shall record the current status of the disputed information or delete it.

34. TransUnion violated § 1681i(a) by: (a) verifying as accurate the chronologically impossible Synovus/First Digital "60 days late" status despite the account being open for only ten days; (b) verifying as accurate the Austin Capital delinquency despite contradictory information in Plaintiff's submissions and in Experian's concurrent reporting; and (c) ultimately removing the Austin Capital account upon litigation threat — demonstrating that its prior reinvestigation results were not the product of a reasonable investigation.

35. These violations were willful. A reasonable reinvestigation of the Synovus/First Digital account would have revealed, as a matter of basic arithmetic, that a sixty-day delinquency could not arise within ten days of account opening. No reasonably conducted investigation could have confirmed this status as accurate.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher P. Daly respectfully requests that this Court:

36. Enter judgment in Plaintiff's favor on all counts;

37. Award statutory damages pursuant to 15 U.S.C. § 1681n(a)(1) in the amount of $1,000 per willful violation;

38. Award punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) in an amount sufficient to deter future willful conduct;

39. Award actual damages, including documented credit-related harm, credit denials, and emotional distress;

40. Award costs of litigation; and

41. Grant such other and further relief as this Court deems just and proper.

## VI. JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Christopher P. Daly, Pro Se

1395 Main Street

Worcester, MA 01603

chris.daly79@icloud.com

(774) 293-3844

Dated: May ___, 2026